UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

DOUGLAS BARNES,

                      Petitioner,

v.

WARDEN OF GREEN HAVEN
CORRECTIONAL FACILITY,

                      Respondent.

**MEMORANDUM AND ORDER**
16-CV-04045 (LDH)

L<small>A</small>SHANN D<small>E</small>ARCY HALL, United States District Judge:

      Douglas Barnes petitions pursuant to 28 U.S.C. § 2254 for a writ of habeas corpus on the grounds that he was unconstitutionally deprived of due process, a fair trial, and effective assistance of counsel. This petition arises out of a jury verdict and judgment of conviction entered in New York Supreme Court, Kings County.

## BACKGROUND

      On the evening of September 29, 2009, Petitioner stabbed his girlfriend, Janis Dunston, thirteen times, killing her. (Trial Tr. 68–72, 196–97, 318–19, ECF No. 6-1.[1]) Seven of the stab wounds were individually fatal. (*Id.* at 240.) Subsequent toxicology reports indicated the presence of cocaine and alcohol in Ms. Dunston's system. (*Id.* at 237–38.) Early the next morning, Petitioner surrendered himself to police at the 73rd precinct, in Brooklyn. (*Id.* at 306, 314–15.) Bleeding from his arm, he told police, "She came at me with a knife. I took it from her

---

[1] ECF No. 6-1 comprises several transcripts of Petitioner's state-court proceedings, most of which are separately paginated. The October 14, 2011 pretrial hearing begins at page 2 and is cited herein as "Pretrial Tr." The transcripts of the July 17, 2013 preliminaries hearing and July 18 jury-selection hearing, which are consecutively paginated, begin at page 68 and are cited herein together as "Prelims. Tr." The trial transcript begins at page 444 and is cited herein as "Trial Tr." The August 29, 2013 sentencing hearing begins at page 1,717 and is cited herein as "Sentencing Tr."

and I lost it." (*Id.* at 318–19.) Petitioner was charged with second-degree murder and fourth-degree criminal possession of a weapon. (Prelims. Tr. 91.)

In a letter dated June 1, 2011, Petitioner informed the trial court that he had not received any plea offers from the district attorney's office and that his counsel had not approached the district attorney's office on his behalf. (Pet. 29, ECF No. 1.) Petitioner requested "a reasonable plea offer," noting that he "did turn [him]self in" to police. (*Id.*) At a pretrial hearing on October 11, 2011, defense counsel indicated that Petitioner would be amenable to a plea, "something along the lines to be short of the top count" of second-degree murder; that no formal plea offers had been made; and that the district attorney's office was "only interested in a top count plea." (Pretrial Tr. 3–4.) The People did not respond to or contradict defense counsel's representation. In a subsequent letter to the trial court dated April 8, 2012, Petitioner stated that he was "willing to take ten or twelve [years] flat with five years parole supervision." (Pet. 31.) He continued: "A reminder, I have to face my sins before I can put them behind me." (*Id.*) On July 17, 2013, the eve of jury selection, the assistant district attorney represented that the People would make "no [plea] offer other than murder." (Prelims. Tr. 20.) The assistant continued:

> The defendant has wanted a flat ten years but that is not legally permissible. As a mandatory persistent [violent felony offender,] he's facing 20 to life on a man[slaughter] one [conviction]. And if he were even convicted on man[slaughter] two, he could be a discretionary persistent [felony offender,] for which the preliminary [sentence] is 15 to life.

(*Id.*)

At the charging conference on July 31, 2013, Petitioner moved the trial court to instruct the jury on the lesser included offenses of first- and second-degree manslaughter and criminally negligent homicide. (Trial Tr. 1115–18.) The People conceded that instructing the jury on first-degree manslaughter "may not be inappropriate here" but argued that "the lower charges of manslaughter in the second degree and criminally negligent homicide are inappropriate for this

2

jury" because there was "no evidence before the jury that [the killing] was reckless." (*Id.* at 1119–20.) The trial court agreed to "include the lesser charge of manslaughter in the first degree" but denied Petitioner's request to charge the jury on second-degree manslaughter or criminally negligent homicide. (*Id.* at 1121.) The court reasoned that "there [was] just no reasonable view of the evidence that would support [its] giving those counts to the jury." (*Id.*) Ultimately, the jury acquitted Petitioner of second-degree murder and convicted him of first-degree manslaughter.[2] (*Id.* at 1270.)

At sentencing, the assistant district attorney acknowledged that she had erroneously classified Petitioner as a mandatory persistent violent felony offender pursuant to New York Penal Law § 70.08. (Sentencing Tr. 3–5.) She explained that § 70.08 requires predicate offenses to be separated by a sentencing. (*Id.* at 4.) Because Petitioner's two predicate offenses were both committed before he was sentenced for either of them, he did not qualify as a mandatory persistent violent felony offender, as the People had previously maintained. (*Id.* at 4–5.) The trial court ultimately classified Petitioner as a second violent felony offender and imposed a custodial term of 25 years followed by five years' post-release supervision. (*Id.* at 5–6, 25.)

On appeal, Petitioner raised three arguments: (1) that he was deprived of due process and a fair trial by the trial court's refusal to instruct the jury on second-degree manslaughter, (2) that he was deprived of effective assistance of counsel by his lawyer's failure to be aware of and correct the prosecutor's mistaken belief during plea negotiations that Petitioner was a persistent violent felony offender, and (3) that his sentence was excessive. (Aff. Opp. Pet. Writ Habeas Corpus Ex. B at 26–42, ECF No. 6-2.) The Appellate Division rejected Petitioner's contentions and affirmed the judgment of conviction and sentence. *People v. Barnes*, 23 N.Y.S.3d 895, 895

---

[2] The jury's verdict as to the charge of fourth-degree criminal possession of a weapon is not apparent.

(N.Y. App. Div. 2016). The Court of Appeals denied leave to appeal. *People v. Barnes*, 56 N.E.3d 904 (N.Y. 2016) (Table).

## STANDARD OF REVIEW

Under 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996, a petition for a writ of habeas corpus by a person in custody pursuant to a state-court judgment may only be brought on the grounds that his custody is "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). A petitioner is required to show that the state-court decision, having been adjudicated on the merits, was either "contrary to, or involved an unreasonable application of, clearly established Federal law" or was "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); *see also Johnson v. Williams*, 568 U.S. 289, 292 (2013).

For the purpose of federal habeas review, "clearly established Federal law" is defined as "the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision." *Williams v. Taylor*, 529 U.S. 362, 412 (2000). A state-court decision is "contrary to," or an "unreasonable application of," clearly established law if the decision: (1) is contrary to Supreme Court precedent on a question of law, (2) arrives at a conclusion opposite to that reached by the Supreme Court on "materially indistinguishable" facts, or (3) identifies the correct governing legal rule but unreasonably applies it to the facts of the petitioner's case. *Id.* at 412–13. Factual determinations made by the state court are presumed to be correct, and the petitioner bears the burden of rebutting the presumption of correctness by clear and convincing evidence. *See* 28 U.S.C. § 2254(e)(1).

**DISCUSSION**

Petitioner argues that he was deprived of (i) due process and a fair trial by the trial court's refusal to instruct the jury on the lesser included offense of second-degree manslaughter and (ii) effective assistance of counsel by his attorney's failure during plea negotiations to correct the assistant district attorney's mistaken assertion that he was a persistent violent felony offender. (Pet. 2.) The Court agrees in part.

**I. Due Process and Fair Trial**

Although the Supreme Court has held that due process requires a trial court to instruct the jury on lesser included offenses in capital cases, neither the Supreme Court nor the Second Circuit has recognized such a constitutional rule in the context of non-capital cases. *Jones v. Hoffman*, 86 F.3d 46, 48 (2d Cir. 1996); *accord Rasmussen v. Kupec*, 54 F. App'x 518, 519 (2d Cir. 2003) (summary order). The absence of such authority is fatal to Petitioner's jury-instruction claim. In *Teague v. Lane*, the Supreme Court held that, generally, "habeas corpus cannot be used as a vehicle to create new constitutional rules of criminal procedure."[3] 489 U.S. 288, 316 (1989). "Since a decision interpreting the Constitution to require the submission of instructions on lesser-included offenses in non-capital cases would involve the announcement of a new rule," the Second Circuit has held that *Teague* precludes its consideration of the issue in habeas proceedings. *Jones*, 86 F.3d at 48. "Following these precedents, [district] courts in this circuit have repeatedly declined to grant habeas relief for failure to charge a lesser included offense in a non-capital case." *Battles v. LaValley*, No. 14-CV-01399, 2018 WL 4558435, at *8

---

[3] "*Teague* and its progeny recognize two categories of decisions that fall outside this general bar on retroactivity for procedural rules. First, new substantive rules generally apply retroactively. Second, new watershed rules of criminal procedure, which are procedural rules implicating the fundamental fairness and accuracy of the criminal proceeding, will also have retroactive effect." *Welch v. United States*, 136 S. Ct. 1257, 1264 (2016) (internal quotation marks, citations, and alterations omitted). Neither exception applies to the instant petition.

(E.D.N.Y. Sept. 21, 2018) (collecting cases), *cert. of appealability denied*, No. 18-3139, 2019 WL 1785490 (2d Cir. Feb. 27, 2019) (dismissing appeal "because Appellant [had] not 'made a substantial showing of the denial of a constitutional right'" (quoting 28 U.S.C. § 2253(c))); *accord Sancho v. Smith*, No. 16-CV-0868, 2016 WL 1171592, at *6 (E.D.N.Y. Mar. 24, 2016). The same outcome is warranted here.

## II.     Effective Assistance of Counsel

The Sixth Amendment guarantees a criminal defendant's right to the effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 686 (1984). In *Strickland v. Washington*, the Supreme Court held that an ineffective-assistance claim sufficient to overturn a criminal conviction on direct appeal requires two showings: (1) "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant" and (2) "that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* at 684, 687.

As to the first *Strickland* factor, Petitioner argues that his counsel's failure to "learn [his] predicate conviction status in preparation for plea negotiations . . . . constituted objectively deficient performance and deprived [him] of meaningful representation during plea negotiations." (Pet. 20.) Petitioner is correct. Indeed, it has long been held that a lawyer's failure to accurately calculate his client's sentencing exposure is objectively unreasonable. *United States v. Gordon*, 156 F.3d 376, 380 (2d Cir. 1998). Accordingly, district courts in this circuit have found that defense counsel's failure during plea negotiations to determine and advocate for the correct application of New York's repeat-offender statutes is objectively deficient and therefore satisfies the first *Strickland* factor. *E.g.*, *Cross v. Perez*, 823 F. Supp. 2d 142, 158 (E.D.N.Y. 2011); *Assadourian v. Brown*, No. 08-CV-4732, 2009 WL 2135297, at *10 (S.D.N.Y. July 16, 2009); *Somerville v. Conway*, 281 F. Supp. 2d 515, 523–24 (E.D.N.Y. 2003);

*Dobbin v. Greiner*, 249 F. Supp. 2d 241, 246 (S.D.N.Y. 2002); *Mask v. McGinnis*, 28 F. Supp. 2d 122, 125 (S.D.N.Y. 1998). Perhaps it is because of this that Respondent does not argue to the contrary. (*See* Mem. Law Opp. Pet. Writ Habeas Corpus ("Opp.") 4–5, ECF No. 6.) In any event, Petitioner has established that his counsel was deficient.

To establish the second *Strickland* factor, prejudice, Petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. Petitioner maintains that, "with the negotiating skills of an actively engaged, accurately informed defense counsel, there [would have been] a reasonable probability of reaching an acceptable agreement." (Pet. 21.) Although not specified in his brief, an acceptable agreement would have presumably reflected the 10-to-12-year sentence Petitioner had informed the trial court he was "willing to take." (*Id.* at 31.)

In support of his argument, Petitioner cites the factually similar case of *Mask v. McGinnis*, 28 F. Supp. 2d 122 (S.D.N.Y. 1998), *aff'd*, 233 F.3d 132 (2d Cir. 2000). (Pet. 19–20.) In *Mask*, the petitioner had been charged with robbery. 28 F. Supp. 2d at 123. The prosecutor had erroneously classified him as a mandatory persistent violent felony offender and made him a plea offer conditioned on a sentence of 10 years to life. *Id.* The prosecutor had described the offer on the record as "the lowest that I can go and the least amount of time that the defendant can get." *Id.* The petitioner had refused the offer and gone to trial, where he was convicted. *Id.* At sentencing, he was correctly classified as a second violent felony offender and sentenced to an aggregate term of 20 to 40 years. *Id.* The Appellate Division considered and rejected his claim for ineffective assistance of counsel based on defense counsel's failure to

7

correct the erroneous classification of him during plea negotiations as a mandatory persistent felony offender. *People v. Mack*,[4] 637 N.Y.S.2d 2, 3 (N.Y. App. Div. 1996).

On habeas review, then-district judge Denny Chin held that defense counsel's "failure to recognize [the] defendant's status as a second violent felony offender rather than a persistent violent felony offender" constituted ineffective assistance that prejudiced the defendant's constitutional right to a fair trial. *Mask*, 28 F. Supp. 2d at 125–26. Judge Chin based his finding of prejudice on two pieces of evidence. *First*, he credited the petitioner's post-trial affidavit stating that a reasonable plea offer in light of his status as a second violent felony offender would have been 8 to 16 years, that he would have accepted a plea offer of less than 10 years to life, and that he had rejected the prosecution's plea offer because it was unreasonable. *Id. Second*, Judge Chin found that the prosecutor's statements "that the offer of 'ten to life' was the 'lowest' she could go and 'the least amount of time that the defendant can get[']. . . . reasonably suggest[ed] that the prosecutor would have been willing to offer a lesser sentence if the law [had] permitted." *Id.* at 126. Judge Chin reasoned that "the sentencing guidelines in effect in 1991 when [the] petitioner was tried indicate[d] that the minimum sentence that the prosecution could have offered was significantly lower—six to twelve years." *Id.* (quoting N.Y. Pen. Law § 70.04 (1990)). "A significant disparity therefore existed between the actual minimum sentencing exposure (six to twelve years) and what petitioner was told and everyone apparently believed (ten years to life)." *Id.* As a remedy, Judge Chin ordered that a writ of habeas corpus would be granted unless the People "agree[d] to (i) reduce petitioner's sentence to a term of eight to sixteen years or (ii) grant him a new trial." *Id.* On de novo review, the Second Circuit affirmed Judge Chin's ruling in its entirety. *Mask*, 233 F.3d at 141–42.

---

[4] The petitioner in *Mask* had "operated under a variety of aliases," including "Mack," so his underlying criminal proceedings were captioned *People v. Mack*. *See Mask*, 28 F. Supp. 2d at 124 n.4.

8

Many of the material facts of this case are virtually indistinguishable from those of *Mask*. Here, as in *Mask*, there was a significant disparity between Petitioner's actual sentencing exposure upon a conviction for first-degree manslaughter (10 to 25 years) and what Petitioner was told and everyone apparently believed (20 years to life). And the prosecutor here erroneously asserted that a sentence below 20 years to life (for first-degree manslaughter) or below 15 years to life (for second-degree manslaughter) was "not legally permissible." (Prelims. Tr. 20.) Such statements reasonably suggest that the prosecutor would have been willing to offer Petitioner a lesser sentence if she had understood that the law allowed it.

In addition, certain facts of this case are even more compelling than those before the *Mask* court. Specifically, unlike in *Mask*, this Court need not rely on a potentially self-serving post-trial affidavit regarding the sentencing range Petitioner would have accepted in a plea agreement. Instead, well before trial, Petitioner submitted letters to the state-court judge indicating his desire to enter into "a reasonable plea offer" and his willingness to accept a sentence of "ten or twelve [years] flat." (Pet. 29, 31.) Moreover, unlike the petitioner in *Mask*, Petitioner here did not maintain "protestations of innocence." 233 F.3d at 142. Rather, in one of his pretrial letters to the trial court, Petitioner stated, "I have to face my sins before I can put them behind me." (Pet. 31.)

Under these circumstances, defense counsel's failure to correct the prosecutor's mistaken view of Petitioner's status as a mandatory persistent violent felony offender—rather than a second violent felony offender—undermines the Court's confidence in the outcome of the proceedings. A second violent felony offender, like Petitioner, who is convicted of first-degree manslaughter must receive a determinate sentence of between 10 and 25 years' imprisonment. N.Y. Penal Law §§ 70.04(2)–(3)(a), 125.20. This 10-year minimum is significantly less than the

9

20- or even 15-year minimum sentences the prosecutor and, apparently, the trial court mistakenly believed were required by law. (*See* Prelims. Tr. 20:14–21.) Moreover, contrary to the prosecutor's assertion, Petitioner's requested 10-year term was "legally permissible." (*Id.* at 20:16.) Had defense counsel corrected the prosecutor's mistake, there is a reasonable probability that further plea negotiations would have been pursued, that the People would have made a plea offer with a sentence of 10 to 12 years, and that Petitioner would have accepted it. Accordingly, Petitioner has established both prongs of the *Strickland* test for ineffective assistance of counsel.

Respondent's argument that Petitioner was not prejudiced by counsel's error because the prosecutor accurately assessed Petitioner's sentencing exposure if convicted of second-degree manslaughter cannot defeat habeas relief.[5] (Opp. 3–4.) Respondent's focus on an available discretionary sentence for second-degree manslaughter is misplaced. The only legal constraint identified by the People as to the minimum duration of sentencing regarded a charge of first-degree manslaughter. (Prelims. Tr. 20.) With respect to second-degree manslaughter, the assistant district attorney expressly acknowledged the trial court's ultimate discretion in imposing a term of imprisonment. (*Id.*) Moreover, at trial, the People opposed instructing the jury on second-degree manslaughter, arguing that there was no reasonable basis in the evidence for such a charge. (Trial Tr. 1120.) It is reasonable to infer that the People did not believe, before trial, that a charge of second-degree manslaughter would have been warranted. By contrast, given the People's representation that "the case law is such that any sort of evidence [of

---

[5] The People represented that Petitioner was eligible for sentencing as a discretionary persistent felony offender under Penal Law § 70.10. (Prelims. Tr. 20.) Section 70.10(2) permits a court to sentence a persistent felony offender as though he had committed a class A-I felony where the court "is of the opinion that the history and character of the defendant and the nature and circumstances of his criminal conduct indicate that extended incarceration and life-time supervision will best serve the public interest." The minimum term of imprisonment for a class A-I felony is 15 to 25 years. N.Y. Penal Law § 70.00(3)(a)(i). Normally, as a class C felony, second-degree manslaughter carries a *maximum* term of 15 years and a minimum term of one year to one-third of the maximum term. *Id.* §§ 70.00(2)(c), (3)(b), 125.15.

10

justification] practically allows for" a charge of first-degree manslaughter (*id.* at 1121), it is reasonable to infer that the People would have agreed to a plea to first-degree manslaughter.

As already noted, Petitioner raised his ineffective-assistance claim on direct appeal, and the Appellate Division rejected it on the merits. *See Barnes*, 23 N.Y.S.3d at 896 ("The defendant's remaining contention is without merit."). Accordingly, to prevail in this collateral challenge, Petitioner "must do more than show that he would have satisfied *Strickland*'s test if his claim were being analyzed in the first instance, because under § 2254(d)(1), it is not enough to convince a federal habeas court that, in its independent judgment, the state-court decision applied *Strickland* incorrectly." *Bell v. Cone*, 535 U.S. 685, 698–99 (2002). "Rather, he must show that the [Appellate Division] applied *Strickland* to the facts of his case in an objectively unreasonable manner." *Id.* at 699. Nonetheless, even under this more demanding standard, Petitioner has satisfied the Court that relief is warranted.

## CONCLUSION

For the foregoing reasons, Petitioner's application for a writ of habeas corpus shall be GRANTED unless, within 30 days of the entry of this memorandum and order, Respondent notifies the Court in writing that Respondent agrees to either (i) reduce Petitioner's sentence to a term of 10 to 12 years or (ii) grant him a new trial.

                                                                                                                SO ORDERED.

Dated: Brooklyn, New York                                     /s/ LDH
       July 9, 2019                                                 LaSHANN DeARCY HALL
                                                                                 United States District Judge